UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 5:26-cv-1124-AB | Date: | March 19, 2026 |
| --- | --- | --- | --- |

| Title: | *Cynthia Palafox aka Valentin Martin Palafox v. Warden Fereti Semaia* |
| --- | --- |

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
| --- | --- |

| Evelyn Chun | N/A |
| --- | --- |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| --- | --- |
| None Appearing | None Appearing |

**Proceedings:**   **[In Chambers] ORDER GRANTING PETITIONER'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [DKT. NO. 3]**

On March 11, 2026 Petitioner Cynthia Palafox ("Petitioner") filed an *ex parte* application for a temporary restraining order. TRO Appl., Dkt. No. 3. Respondent Warden Fereti Semaia for the Adelanto Detention Facility ("Respondent") filed an untimely opposition, which the Court strikes as per this Court's Standing Order, and will consider this TRO Application as unopposed. *See* Standing Order For Civil Cases Assigned to Judge Birotte ¶ 17. Petitioner attempted to file a Reply, which is stricken in accordance with this Court's Standing Order. *Id.* For the reasons set forth below, Petitioner's TRO Application is **GRANTED**.

## I.   BACKGROUND

Petitioner initiated this action through a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. "Habeas Pet.," Dkt. No. 1. Petitioner is a transgender woman and originally from Mexico. TRO Appl. at 9. On April 7, 2011, Petitioner

was granted a withholding of removal and placed on an Order of Supervision. *Id.*, Exs. B & C. Petitioner has since attended all of her ICE check-ins. TRO Appl. at 10. During a November 12, 2025 check-in, she was given an ankle monitor. *Id.* at 10. On January 7, 2026, she was detained at a routine ICE check-in and transferred to the Adelanto Detention Facility. *Id.* She was provided no written notice, no reason for the revocation of her supervision, or an opportunity to respond to the revocation of her supervision. *Id.* To date, Petitioner has not been informed whether travel documents have been requested or whether removal had been scheduled. *Id.* at 11. No third country for removal has been identified, any potential third countries provided to Petitioner would likely result in her persecution. *Id.*

Since her detention in January 2026, Petitioner worked with an attorney who recommended she seek bond, though Petitioner was ineligible for bond. *Id.* The attorney was unsuccessful. *Id.* In February 2026, Petitioner experienced a life-threatening cardiac emergency that required her to be admitted to the emergency department at Victor Valley Global Medical Center. *Id.* at 12. Petitioner was then hospitalized for several weeks at an undisclosed location where family members were unable to visit her. *Id.*

Petitioner now files the TRO Application and Habeas Petition seeking immediate release under reasonable conditions of supervision and enjoining Respondent from continuing her detention absent adequate constitutional and statutory justification. She argues her detention is a violation of the Fifth Amendment Due Process Clause, 8 U.S.C. § 1231(a) as well as its accompanying regulations, 8 U.S.C. § 1231(b), and constitutional protections against attachment of punishment to deportation. This TRO Application is unopposed by Respondent. The Court **GRANTS** the TRO Application for the reasons stated below.

## II.    LEGAL STANDARD

To obtain a TRO, Petitioner must show the four *Winter* factors, or that (1) she is likely to succeed on the merits of his claims, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Stromans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

A TRO is a kind of ex parte application, so the moving party must "establish why the accompanying proposed motion for the ultimate relief requested cannot be calendared in the usual manner. In other words . . . the moving party [must show why it] should be allowed to go to the head of the line in front of all other litigants

and receive special treatment." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 492 (C.D. Cal. 1995) (explaining that the applicant for ex parte relief must demonstrate urgency and that it is without fault in creating the urgency).

## III.   DISCUSSION

### A. Petitioner has met her burden for a TRO.

The Court assesses the TRO Application through the four *Winter* factors and finds that Petitioner has satisfied her burden.

### i.   Likelihood of Success on the Merits

Petitioner asserts three bases for her TRO Application: (1) the Fifth Amendment Due Process Clause and 8 U.S.C. § 1231(a) as well as its accompanying regulations; (2) 8 U.S.C. § 1231(b) as well as its accompanying regulations; and (3) constitutional protections against the attachment of punishment with deportation. The first basis is sufficient to support her TRO Application.

The Court notes that detention, release, and removal of individuals ordered removed is governed by 8 U.S.C. § 1231(a). *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). A noncitizen shall be removed within 90 days of the removal order, subject to a potential 90-day extension. 8 U.S.C. § 1231(a)(1). However, once that period passes and the noncitizen is not removed, they "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). The noncitizen may be detained beyond the removal period under certain conditions, but "if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6). Petitioner is one such noncitizen, who was released under terms of supervision.

The implementing regulations outline the specific actions the government must take prior to revocation of supervised release. For supervised release to be revoked, a noncitizen must be "notified of the reasons for revocation of his or her release" and be given "an initial informal interview promptly after his or her return to [] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). If the noncitizen continues to be detained after the informal interview, they will move through the "normal review process," which includes a formal interview. 8 C.F.R. §§ 241.4(l)(3). "In simpler terms, in order to revoke release, the government must

notify the noncitizen of the reason for the revocation and give them both an informal and formal interview." *Delkash v. Noem*, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025).

The Court finds that Petitioner has demonstrated a likelihood of success on her claim that her continued detention is unlawful and unconstitutional. Petitioner claims that she never received the interview or notification, as is required under the implementing regulations. TRO Appl. at 10. Indeed, she claims that she would have made several of the points made in the TRO Application and Habeas Petition at a hearing if she was provided an opportunity to do so. *Id.* at 11. As numerous courts have held, Respondent's failure to follow its own regulations in detaining Petitioner also violates Petitioner's constitutional right to procedural due process. *Ramos v. Noem*, 2026 WL 303536, at *4 (C.D. Cal. Feb. 4, 2026), *Liu v. Casey*, 2026 WL 482863, at * 3 (S.D. Cal. Feb. 20, 2026), *Roca v. Scott*, 2026 WL 60412, at *2-3 (W.D. Wash. Jan. 8, 2026). Respondent offers no explanation, opposition, or counterargument to Petitioner's position. Thus, based on the evidence, the Court finds that Petitioner is likely to succeed on this claim.

As this alone is sufficient to meet the first *Winter* factor, the Court declines to address the other grounds raised in the TRO Application.

### ii. Irreparable Harm

In order to obtain a TRO, a Petitioner must demonstrate she is likely to suffer irreparable harm in the absence of preliminary relief. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Petitioner has been detained by ICE since January 2026. TRO Appl. at 10. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It is well established that the "deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

The Ninth Circuit has further recognized the irreparable harms suffered by those in ICE detention, including "subpar medical and psychiatric care. . . economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

Petitioner's continued detention in ICE custody constitutes irreparable harm. This Court finds the second TRO factor is satisfied.

### iii. Balance of the Equities and Public Interest

The last two TRO factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court finds that both the balance of the equities and the public interest weigh heavily in favor of Petitioner.

As noted above, it is likely that Petitioner's continued detention is unconstitutional and unlawful. Violations of federal law are neither equitable nor in the public's interest. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Respondents have made no arguments in opposition. Accordingly, this Court finds that the final two TRO factors weigh in favor of Petitioner.

### IV.   CONCLUSION

For the reasons stated above, this Court finds Petitioner has met her burden for a TRO. The Court **GRANTS** Petitioner's Application for a TRO. **IT IS FURTHER ORDERED** that:

1. Respondent must immediately release Petitioner under the terms of her April 7, 2011 Order of Supervision.

2. Respondent is further barred from re-detaining Petitioner unless Petitioner receives process as required under 8 C.F.R. §§ 241.4(l)(1), §§ 241.13(i)(3) and the Due Process Clause of the Fifth Amendment.

3. Respondent and Petitioner are required to file a joint status report regarding the compliance with the order within ten (10) days of this order.

4. Respondent is Ordered to Show Cause, in person, on why a preliminary injunction should not issue on March 31, 2026 at 12:30 pm in Courtroom 7B.

5. This Order shall be in effect for a period of fourteen (14) days from entry hereof, after which it shall expire absent further order of the Court.

6. Respondents are enjoined from transferring, relocating, or removing Petitioner from the Central District of California without further order of the Court and pending final resolution of this litigation.